Beraldine L. ACHA and Arlene M. Egan, each Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Abraham D. BEAME, Individually and in his capacity as Mayor of the City of New York, Michael J. Codd, Individually and in his capacity as Police Commissioner of the New York City Police Department, and the City of New York, as a public employer, Defendants.

No. 75 Civ. 3128.

United States District Court, S. D. New York.

July 28, 1977.

Murray A. Gordon, P.C., New York City, for plaintiffs by Murray A. Gordon, Kenneth E. Gordon, New York City, of counsel.

W. Bernard Richland, Corp. Counsel, New York City, for New York City Officials by Judith Levitt, Paul Brennan, New York City, of counsel.

Equal Employment Opportunity Commission by Lutz Alexander Prager, Washington, D.C., amicus curiae.

OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiffs' class, consisting of female New York City police officers who were laid off on June 30, 1975, have, to date, substantially succeeded in challenging the hiring practices of the New York City Police Department ("N.Y.P.D.") as violative of Title VII, 42 U.S.C. § 2000e *et seq.* In the wake of the Supreme Court's rulings in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52

L.Ed.2d 396 (1977) and *United Airlines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the City of New York, its Mayor and its Police Commissioner, have renewed their motion for summary judgment, previously denied, dismissing this action. A brief review of the facts giving rise to this suit[1] and of the suit itself is necessary for an understanding of the motions.

## I.

Prior to January 1973, men, but not women, were eligible for the positions of "patrolman" and, for those men under the age of 21, "police trainee;" women were eligible only for the position of "policewoman." The N.Y.P.D. administered examinations for the policewoman position on March 21, 1964, Test No. 9986, and October 25, 1969, Test No. 9081. Between the dates of these two policewoman examinations, seventeen examinations were given for the patrolman and/or police trainee slots. Although no new uniformed officers, male or female, were hired from mid-1970 until 1973, by December 28, 1972, there were 25,210 members of the force, only 282 of whom were women. The low number of women was the product of an alleged official limitation which prevented the percentage of women from exceeding 1.34% of the total uniformed force.

Sometime in 1972, the Department, which had previously assigned policewomen primarily to matron-like functions, began to assign females to patrol duties. On April 24, 1973, then Police Commissioner Patrick V. Murphy ordered the merger of the separate categories of "patrolman" and "policewoman" into that of "police officer" and, thereafter, the identical height and weight requirements were imposed upon each sex. The plaintiffs assert that the official quota upon women members of the police force was not eliminated but was modified so that for every four men hired, one woman was hired. By June 1975, the percentage of women in the force rose to 2.62%.

Beginning in late May 1975, the N.Y.P.D. sent notices to over 5,000 police officers informing them that they would be terminated for budgetary reasons as of June 30, 1975. On June 25, Beraldine L. Acha and Arlene M. Egan, the named plaintiffs, filed charges with the New York City Human Rights Commission and the United States Equal Employment Opportunity Commission ("E.E.O.C.") alleging that the proposed terminations would constitute unlawful sex discrimination since there would be a disproportionate impact upon women. On June 26, this action was commenced under 42 U.S.C. §§ 1983 and 2000e–2; plaintiffs promptly moved for a preliminary injunction.

I ruled that although the layoffs would reduce the number of women on the force by 73.5% but only reduce the number of men by 23.9%, the firings were lawful because they were pursuant to a facially neutral seniority system and followed the "last hired, first fired" dictates of the N.Y. Civil Service Law § 80 (McKinney 1973). *See* 401 F.Supp. 816 (D.C.1975). In denying the injunction and dismissing the complaint, I relied upon Third and Seventh Circuit decisions which had held that discharges based upon a bona fide seniority system were immune from attack by reason of Section 703(h) of Title VII, 42 U.S.C. § 2000e–2(h), even though the seniority system perpetuated past discrimination.

The Court of Appeals reversed my determination and ruled that

"If a female police officer can show that, except for her sex, she would have been hired early enough to accumulate sufficient seniority to withstand current layoffs, then her layoff violates section

1. Since the June 1975 layoffs of female police officers were held to be a violation of Title VII, the earlier hiring practices of the Police Department have never been subjected to the factfinding processes. Thus, the summary of facts is based upon the allegations of the complaint, the affidavits which have been submitted in support of the various motions in this case, and the exhibits thereto. Although some of the facts are either undisputed or necessarily decided by my affirmance of the First and Second Interim Reports of the Special Master, much remains in dispute.

703(a)(1) of Title VII, 42 U.S.C. § 2000e–2(a)(1), since it is based on sexual discrimination."

531 F.2d 648, 654 (2 Cir. 1976).

In advance of rehirings planned for July 7, 1976, plaintiffs moved for class certification, together with summary judgment and injunctive relief, for 54 class members. The defendants cross-moved for summary judgment raising the grounds of statute of limitations and laches. I ruled that the action was timely, relying upon the rationale of the Seventh Circuit's ruling in *Evans v. United Air Lines,* 534 F.2d 1247 (1976). I granted class certification and partial summary judgment and injunctive relief to 38 women who took examination No. 9081 given on October 25, 1969, the same date that the identical examination, No. 9080, was given to males, and who received sufficiently high test scores so that they would have been among the 125 police trainees who were hired in May 1970; each of the 38 had been under the required age of 21 at the time the 125 similarly situated males were appointed.

Since partial summary judgment had been entered pursuant to Rule 54(b), Fed.R. Civ.P., defendants filed a notice of appeal. On October 7, 1976, the Court of Appeals dismissed the appeal for failure to properly docket as required by that Court's "Civil Appeals Management Plan."

At the plaintiffs' request and without the opposition of defendants, I appointed a Special Master pursuant to Rule 53, Fed.R. Civ.P., to hear and report on the cases of the several hundred individual class members. To date, Special Master Renee Roberts has completed hearings in the cases of approximately 150 class members. She has issued five interim reports deciding the claims of 78 women. In advance of rehirings in March 1977, I confirmed the findings of fact and conclusions of law of all but 13 of the women[2] and enjoined rehirings from a seniority roster which did not reflect the adjusted seniority of 34 women found entitled to relief. Through the cooperation of all counsel and of the Special Master, all successful class members have been reinstated without the need for "bumping" any male officers in active service.

## II.

Plaintiffs' threshold argument in opposition to defendants' renewed summary judgment motion is that this Court is deprived of jurisdiction to consider any issues necessarily decided by the Court of Appeal's February 19, 1976 opinion, and that a motion should first be made in the Court of Appeals to recall their mandate. Last term, in *Standard Oil Co. of California v. United States,* 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976), the Court ruled that it is unnecessary to move to recall a mandate prior to a district court's consideration of a Rule 60(b), Fed.R.Civ.P., motion, and that such a motion to recall would actually be improper.

■ Alternatively, plaintiffs contend that the entry of partial summary judgment and the subsequent dismissal of the appeal renders the issues decided therein *res judicata.* While plaintiffs are correct in their assertion, the purpose of Rule 60(b) is

2. In an oral opinion of February 25, 1977, I ruled that "two elements . . . must coalesce in point of time: first, an individual must have had the desire and intent to become a police officer; and, second, an individual must have possessed all of the requirements for appointment." I, therefore, remanded the cases of those women who lacked a high school diploma or New York driver's license as of the retroactive seniority date awarded to them by the Special Master. In the case of one woman who lacked the mandatory residency requirement, I concluded that since residency can be changed at any moment by act of will, it was essentially a factual question whether, considering all the facts and circumstances, the individual would have changed her residency. My ruling on the diploma, license, and residency is now the subject of a Rule 52(b) motion which will be stayed pending hearing. When and if the Rule 52(b) motion is reached, I will also consider plaintiffs' argument that the cases of Vanina Maffia and Carol Kane (Third Interim Report at 3; Fourth Interim Report at 11), who received a New Jersey but not a New York license, should be judged by the "act of will" analysis applied to the residency requirement since New York requires the holder of a New Jersey driver's license to pass a written test but not a road test.

to provide relief from judgments which have become final.

[2–4] Rule 60(b) permits a court to relieve a party from a final judgment on the ground of "(1) mistake . . . (5) . . . it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment." Such a motion must be made within a reasonable time and, if sought under subdivision one, made within one year. Plaintiffs urge that a reasonable time cannot exceed the time allowed for filing a notice of appeal. *See Schildhaus v. Moe*, 335 F.2d 529 (2d Cir. 1964); *Moore's Federal Practice*, ¶ 60.27[1]. No such limitation appears in the rule. Whatever the merits of the suggested construction of the phrase "reasonable time" might be in other contexts, they do not apply here since this Court is exercising active and continuing jurisdiction over the suit, and particularly since no complete final judgment has been entered. In so ruling, I am not unmindful of prior teachings of this Circuit nor of the commentaries of learned professors. But each case is unique and procedural rules must be interpreted so as to achieve justice. The continued growth and viability of our common law demand no less.

■ Thus, reaching the question of whether there are appropriate grounds for relief from the judgment, I find that such relief is wholly proper. In fact, to do otherwise might create the anomalous situation in which the first 38 women reinstated pursuant to the grant of partial summary judgment would not be affected by *Evans* and *Teamsters*, but those reinstated thereafter in March 1977, would be. Because of the inequities created by a denial of the Rule 60(b) motion and the continuing nature of the injunctive decree, the judgment will be vacated.

### III.

■ The City defendants argue that the 300 day statute of limitations contained in 42 U.S.C. § 2000e–5(e) time-bars an action predicated upon the City's hiring practices. As previously indicated, my July 16, 1975 opinion relied upon the Court of Appeals decision in *Evans*, for the proposition that failure to credit an individual with proper seniority is a separate and continuing violation of Title VII. In reversing the court below in *Evans*, the Supreme Court squarely rejected any such notions:

"A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

"Respondent emphasizes the fact that she has alleged a continuing violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present violation exists. She has not alleged that the system discriminates against former female employees or that it treats former employees who were discharged for a discriminatory reason any differently than former employees who resigned or were discharged for a non-discriminatory reason. In short, the system is neutral in its operation." 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977)

I find that with respect to hiring practices, the discriminatory act occurs when a male police officer is hired instead of a female who meets all requirements for appointment and has a higher test score. Any class member who can demonstrate that such hirings occurred within the 300 days prior to June 25, 1975, may succeed. In its affidavits in support of summary judgment the City has averred that all class members were appointed to the force prior to the 300 day period.

The plaintiffs challenge this basic assertion only with respect to two class members. Frances Kripinski and Mary Ann Horneck, who were not hired until a point

in time within the 300 day statute of limitations. The City defendants have submitted uncontradicted proof that Ms. Kripinski was offered appointment in April 1973, but withdrew from consideration at that time, and that Ms. Horneck was offered a position in January 1973, but she, too, declined. Apparently no hiring discrimination occurred with respect to these women within the period of limitations.

■ In his rebuttal affidavit of July 19, 1977, plaintiffs' counsel has asserted for the first time that a class member, Alice McCain, filed charges with the E.E.O.C. on September 11, 1973. A copy of these charges was handed up to me at oral argument and it appears that although they primarily challenge the hiring practices with regard to pregnancy, they could arguably be considered as a general attack on the Department's hiring policy. Plaintiffs contend that the filing of charges by a class member tolls the statute of limitations for all other members of the class and that the period of limitations should be measured from the date of the McCain charges.

In the typical case the named plaintiff files E.E.O.C. charges, commences a district court action, moves for class certification, and the entire class is given the benefit of the date of the named plaintiff's filing. See e. g., *United States v. Georgia Power Co.*, 474 F.2d 906, 925 (5th Cir. 1973). The case before me, however, has been pending for two years and has been certified as a class for one year; at all times it has proceeded on the theory that the limitations period is to be measured from the date of the Acha and Egan charges. Fairness to both parties dictates that I not rule on the viability of the McCain charges now but permit the plaintiffs to amend their complaint to include the proper allegations; thereafter, the City defendants may raise the defenses of statute of limitations and laches, as they have indicated a desire to do.

■ Even assuming the timely filing of charges with the E.E.O.C., the City contends that the *Teamsters* decision forecloses most class members' Title VII claims. In short, *Teamsters* held that a Title VII viola-

tion may not be premised upon discriminatory acts which occurred before the effective date of Title VII even though a present seniority system perpetuates the effect of pre-Title VII discrimination. Plaintiffs seek to avoid the application of *Teamsters* by arguing that it does not apply to the 1972 amendments which brought municipal employees within the ambit of the Act. While the *Teamsters* court did not decide that question, it did observe that the 1972 amendments to Title VII "in no way points to a different result." 431 U.S. 324, 354 n. 39, 97 S.Ct. 1843, 1864, 52 L.Ed.2d 396. Moreover, in the later case of *Hazelwood School District v. United States*, —— U.S. ——, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977), the Court applied the *Teamsters* rationale to municipal employees without further discussion. Whatever may be said of the power of Congress to reach discrimination outside the purview of Title VII through the enforcement clause of the Fourteenth Amendment, it seems clear that in enacting the 1972 amendments Congress simply intended to grant municipal employees the identical Title VII benefits which private employees enjoy in addition to the 42 U.S.C. § 1983 rights which municipal employees had previously enjoyed. S.Rep. No. 92–415, pp. 10–11 (1971); H.R.Rep. No. 92–238, p. 17, U.S.Code Cong. & Admin.News 1972, p. 2137 (1971). Thus, with respect to Title VII relief, municipal employees are subject to all limitations of that Act.

■ An analysis of *Teamsters* must begin with *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), wherein the Court held that section 703(h), the seniority system immunity provision, does not bar the remedy of a seniority revision to a date when an employee would have been hired but for the discrimination. Among the restrictions placed upon *Franks*, the *Teamsters* holding requires that the discrimination have taken place after the effective date of Title VII, which in the case of municipal employees is March 24, 1972. Pre-Act discrimination which is perpetuated by a neutral seniority system is immunized from Title VII attack

by reason of section 703(h). 431 U.S. at 324, 97 S.Ct. 1843. To fall outside the immunity afforded to a bona fide seniority system, plaintiffs must show more than the system's failure to correct pre-Act discrimination.

Thus, the June 1975 layoffs pursuant to a facially neutral seniority system were immunized and cannot be the basis for a Title VII violation. Therefore, plaintiffs are effectively restored to their pre-summary judgment status and to succeed must establish a prima facie case of a Title VII violation which occurred after the effective date of the Act and within the period of the statute of limitations. Thereafter, any class member who was not hired until after March 24, 1972 and, but for her sex would have been hired earlier than her actual appointment date, is entitled to a seniority revision.

Apart from construing the requisites of a Title VII violation, *Teamsters* also limited the relief which may be afforded to an individual who does successfully establish post-Act discrimination. "[N]o person may be given retroactive seniority to a date earlier than the effective date of the Act." 431 U.S. at 356, 97 S.Ct. at 1865. Thus, if the standards set forth above are met, a class member's seniority date may be revised to the date when she should have been appointed but no earlier than March 24, 1972.

IV.

Heretofore, it had been unnecessary to consider plaintiffs' section 1983 claim because of the supposed applicability of Title VII. An alleged violation of that section must be evaluated separate and apart from any Title VII cause of action. *Cf. Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

The threshold defense of statute of limitations is again argued by the defendants. It is fairly well-settled that the three year statute of limitations provided for in N.Y. CPLR 214(2) governing "an action to recover upon a liability, penalty or forfeiture created or imposed by statute," controls. *See Kaiser v. Cahn*, 510 F.2d 282, 284–85 (2d Cir. 1974). Since this action was filed on June 26, 1975, any discriminatory acts which occurred within the three preceding years would be actionable. With respect to hiring practices, the discriminatory act for statute of limitations purposes, occurs when a male police officer is hired in the place of a qualified female with a higher test score. Thus, class members not hired until after June 1972, may attempt to prove a case. The plaintiffs may also attempt to prove that the layoffs themselves were violative of section 1983. However, they may not attempt to "bootstrap" a challenge to a pre-June 26, 1972 hiring practice simply by alleging that the effects of the earlier discrimination lingered until layoff.

There seems to be no dispute that the City of New York is not a "person" within the meaning of section 1983 whether money damages or injunction relief is sought. *See Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *City of Kenosha v. Bruno*, 412 U.S. 507, 511–13, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). Recovery in the form of monetary damages may be awarded against defendants Beame and Codd, as individuals, if and only if, a direct, personal involvement in a deprivation of plaintiffs' rights is established. *See Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, neither section 1983 nor the Eleventh Amendment presents a bar to a suit for prospective injunctive relief against a municipal or state official acting in his official capacity. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *See Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Yet, where there has been an intervening change in administration, plaintiffs must establish that the successor has or will continue the unlawful policy. *Mayor of Philadelphia v. Educational Equality*

*League,* 415 U.S. 605, 622, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974).[3]

To succeed under section 1983, plaintiffs must establish a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States] . . . ." It is argued that gender-based discrimination by the N.Y.P.D. deprives plaintiffs of their rights secured by the Equal Protection Clause of the Fourteenth Amendment. The scholarly debate continues over the question whether sex discrimination should be subjected to strict judicial scrutiny, *see Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), a rational basis standard, *see Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), a third "middle-tier" between the two, *c.f. Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (concurring opinion of Mr. Justice Powell), or a "sliding scale" requiring a delicate assessment of the rights and classifications in issue, Gunther, *The Supreme Court 1971 —Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for Newer Equal Protection,* 86 Harv.L.Rev. 1 (1972).

In its most recent pronouncement,[4] the Supreme Court struck down a gender-based classification as violative of the Equal Protection Clause but could not agree on the standard to be used. *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Three members of the Court concurred that "classifications by gender must serve important governmental objectives and must be substantially related to the achievement of those objectives." 429 U.S. at 197, 97 S.Ct. at 457. Mr. Justice Powell concurred in the result but disagreed with the formu-

lation of the majority; he would adhere to the rational basis formulation with a recognition that gender-based classifications are subject "to a more critical examination . . . ." 429 U.S. 210, 97 S.Ct. 464. In concurring, Mr. Justice Stevens expressed caution about "articulat[ing a standard] in all-encompassing terms[,]" and would analyze each case in terms of "whether the . . . justification put forward by the State is sufficient to make an otherwise offensive classification acceptable." 429 U.S. at 213, 97 S.Ct. at 465. Mr. Justice Stewart concluded that the classification would not pass muster under the rational-basis test, 429 U.S. at 210–214, 97 S.Ct. at 463–465. The Chief Justice and Mr. Justice Rehnquist also would apply a rational basis standard but would have upheld the classification at issue in *Craig,* 429 U.S. at 217–225, 97 S.Ct. at 467–471.

■ For the purposes of this case, it suffices to say that the sex-based distinctions must have more than simply a conceivable basis in reason but need not be justified by a compelling interest; there must be some substantial justification. Further refinement of this standard may await the development of proof at trial.

Plaintiffs suggest that the April 1973 merger of the patrolman and policewoman ranks is conclusive evidence of a lack of any justification for the distinction between men and women in the N.Y.P.D. While I agree that the merger may be strong evidence of a lack of justification, I am reluctant to foreclose defendants from introducing proof on the issue. To do so would inhibit employers from correcting past acts of sex discrimination for fear that such

---

**3.** While *Edelman v. Jordan,* 415 U.S. 651, 661–67, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) forecloses any money judgment payable out of a state treasury, regardless of whether it is an adjunct of equitable relief, the holding is not directly applicable to municipalities since they are not protected by the Eleventh Amendment. Recently, the Court of Appeals for this Circuit, relying upon *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), ruled that back pay awards may not be obtained under section 1983 against municipal officials in their official

capacity. *Monell v. Department of Social Services,* 532 F.2d 259 (2d Cir. 1976), *cert. granted,* 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977); if the Supreme Court should rule to the contrary, the question of back pay under section 1983 may be reopened.

**4.** The later case of *Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), decided under equal protection concepts as incorporated into the Fifth Amendment, does not shed additional light on the problem.

activity would immediately subject them to liability.

If the plaintiffs should succeed in establishing a lack of substantial justification for treating women in the N.Y.P.D. differently than men, their task is not complete. In order to establish a violation of the Equal Protection Clause enforceable under 42 U.S.C. § 1983, there must be proof that a discriminatory intent or purpose was a motivating factor in the official action. *Washington v. Davis*, 426 U.S. 229, 238–48, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Village of Arlington Heights v. Metropolitan Housing Development*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). The discriminatory impact of a facially neutral policy is probative, but not determinative, of intent. *De jure* discrimination, in which a law or official policy expressly treats a class of persons in a less favorable manner, is, by its nature, intentional. *See Keyes v. School Dist. No. 1*, 413 U.S. 189, 205, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973); *Washington v. Davis*, 426 U.S. at 240, 96 S.Ct. 2040. Thus, plaintiffs must show a discriminatory intent behind neutral policies which adversely affect women or show non-neutral, express discrimination.

### V.

I have been advised by the parties that the City of New York plans to rehire a substantial number of police officers within the next thirty days. The plaintiffs seek an injunction against any rehirings which do not reflect the proper seniority of the women found entitled to relief in the Third, Fourth and Fifth Interim Reports of the Special Master, together with those women who were not found entitled to seniority revision but concerning whom plaintiffs believe the Special Master's findings were erroneous. The City defendants oppose all such relief and further seek a vacatur of the injunctions which followed the July 16, 1976 grant of summary judgment and the First and Second Interim Reports. Since the plaintiffs are effectively restored to pre-July 1976 status, the standard for a preliminary injunction would govern.

In this Circuit, a preliminary injunction will issue

"only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardship tipping decidedly toward the party requesting preliminary relief."

*Sonesta Int'l Hotels v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973) (emphasis in original). There has been an indication in this Circuit that the "balance of the hardship" requirement of the second test must include a finding of irreparable harm. *Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356, 1359 (2d Cir. 1976).

I find that even upon a generous view of the "balance of the hardships" test plaintiffs cannot obtain the requested injunction. The number of police officer slots open to rehirees is fixed by manpower and budgetary limitations. An injunction revising a female former police officer's seniority will necessarily mean that another former police officer, male or female, who actually entered service on an earlier date will not be hired; thus, the likelihood of irreparable injury or the balance of the hardships is equal to both the alleged discriminatees and non-discriminatees. Moreover, the office of a preliminary injunction is to maintain the status quo, *SCM Corp. v. Xerox Corp.*, 507 F.2d 358, 361 (2d Cir. 1974), and an injunction granting affirmative relief will only issue if a clear right to that relief is shown. *Blaich v. National Football League*, 212 F.Supp. 319, 320 (S.D. N.Y.1962). The plaintiffs' request for an injunction is, therefore, denied.

For these same reasons, I will not vacate the injunctions heretofore granted. The class members covered by those injunctions have already established to the satisfaction of the Special Master and of this Court that but for certain policies of the N.Y.P.D. they would have been hired at an earlier date. Pending a determination of whether those

policies were unlawful and whether their cases are timely, it is entirely proper to continue the injunction since it will maintain what is now the status quo. By freezing events at the present status quo, disruption within the N.Y.P.D. will be minimized. I will, however, direct that the the City defendants advise all new rehirees, in advance of rehiring, that there is a very real possibility that the seniority roster may be revised in such a manner as will result in their layoff.

A prompt resolution of the factual issues raised in this opinion is in the best interests of all the parties. The requirements of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, governing the disposition of criminal cases, prevents me from restructuring my trial calendar. I am, therefore, directing Special Master Roberts, who has already presided over 150 hearings in this case, to hear and report on the factual questions presented herein. Commencement of the hearing must first await a resolution of the McCain issue.

The City defendants' motion to vacate partial summary judgment heretofore entered for some plaintiffs, is granted but the injunctions entered on behalf of these plaintiffs will stand as a preliminary injunction. The defendants' cross-motion for summary judgment is denied without prejudice to its renewal, along with a motion addressed to the McCain amendments.

The plaintiffs' application for further preliminary injunctions is denied.

The factual determinations of the Special Master in the Third, Fourth and Fifth Interim Reports are confirmed but the cases of class members found entitled to revised seniority are remanded for new findings and conclusions consistent with this opinion.

Plaintiffs' motion pursuant to Rule 52(b), along with all other questions of Title VII relief raised in its May 10, 1977 motion, are stayed pending trial.

All other relief requested by the parties is denied.

SO ORDERED.