Joseph MEWSHAW, Plaintiff,

v.

POLICE DEPARTMENT, CITY OF NEW YORK, Personnel Department, City of New York, and The City of New York, Defendants.

No. 79 CIV 4288 (LBS).

United States District Court, S. D. of New York.

June 2, 1980.

Ira Leitel, New York City, for plaintiff.

Allen G. Schwartz, Corp. Counsel City of New York, New York City, Ellen August, Asst. Corp. Counsel, for defendants.

## OPINION

SAND, District Judge.

Plaintiff is a New York City Police Sergeant who was admittedly denied appointment as a police officer in 1961, 1963 and 1965 solely because he failed to meet the then existing height requirement of 5'8". During those years, the height requirement for women police officers was lower than that for men, and plaintiff alleges that he would have been eligible for appointment if the height requirement for women was applied to men. The height requirement for males was lowered to 5'7" in 1968 and the plaintiff, who is 5'7" tall and who had passed the written examination for a fourth time, was appointed as a police officer in 1969.[1] In 1973, at the first opportunity available to him, plaintiff took and passed the Sergeant's examination, and was appointed to that position in 1975.

Plaintiff initially brought this action *pro se* under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1970), and now seeks to amend his complaint to assert, *inter alia*, a cause of action under 42 U.S.C.

§ 1983 (1970). Although various kinds of relief are demanded in the complaint, it became clear at the oral argument on the motions currently before the Court that plaintiff's primary goal is to prevent the City of New York from conducting a "make-up" examination for promotion to Lieutenant unless he is allowed to take that examination.

There is no dispute that among those eligible to take the proposed make-up examination are those persons who would have been eligible to take the most recent Lieutenant's examination held in 1973 but who were unable to do so for one of the reasons set forth in Rule 4.4.5 of the Rules and Regulations of the City Personnel Director.[2] Also eligible are women police officers who were parties to *Acha v. Beame*, 401 F.Supp. 816 (SDNY 1975), *rev'd*, 531 F.2d 648 (2d Cir. 1976), *on renewal*, 438 F.Supp. 70 (SDNY 1977), *aff'd* 570 F.2d 57 (2d Cir. 1978) and who, as a result of the settlement of that litigation, received retroactive seniority dates which would have made them eligible to take the 1973 Lieutenant's examination.[3] Plaintiff was not eligible to take the 1973 examination and was not a member of the plaintiff class in *Acha v. Beame*. Plaintiff claims that he would have been eligible to take the 1973

---

1. The height requirement was eliminated in 1973.

2. Rule 4.4.5, a copy of which is annexed to the affidavit of Jack Stern, Deputy Assistant Personnel Director in the Criminal Justice Task Force of the New York City Department of Personnel, provides as follows:

   "4.4.5. *Second or Special Examinations*
   Except as provided in paragraph 4.4.6 hereof, or as provided in the military law of the State of New York, no candidate shall be given a second or special competitive test in connection with an examination held, unless it be shown to the satisfaction of the city personnel director or the head of the examining agency that the candidate's failure to take or complete such test was due to:
   (a) a manifest error or mistake for which the department of personnel or the examining agency is responsible, the nature of which shall be recorded,
   (b) compulsory attendance before a court or other public body or official having the power to compel attendance,

   (c) physical disability incurred during the course of and within the scope of the municipal employment of such candidate where such candidate is an officer or employee of the city,
   (d) absence for a period of one week from the date of death of a spouse, mother or father, sister or brother, or child of such candidate.
   No such claim shall be granted unless it is submitted in writing to the department of personnel or the examining agency either in person or by certified or registered mail within two months following the date of the regular examination."
   Paragraph 4.4.6 deals with "Sabbath Observers".

3. The Court is advised that the *Acha* settlement does not require that a make-up examination be given for class members, who, as a result of their retroactive seniority award, would have been eligible to take the 1973 exam.

Lieutenant's examination had he not been discriminated against on account of his sex prior to 1969. The gist of plaintiff's complaint is that if a make-up examination from which he is excluded is given, a new list of persons eligible for appointment to Lieutenant will be promulgated and he will not be able to take a Lieutenant's examination until that new list is exhausted.[4]

■ Since the discriminatory acts of public employers are covered by Title VII only if they occurred after March 24, 1972, plaintiff concedes, as he must, that neither the alleged discriminatory acts which occurred prior to his appointment in 1969, nor the fact that he has to some extent continued, as a result of the seniority system, to suffer from the lingering effects of those alleged acts, is actionable under Title VII. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). The discriminatory acts which plaintiff now contends are actionable under Title VII are the denial of his request to recompute his seniority "as was done for females who" were members of the plaintiff class in *Acha v. Beame*, the denial of his request to take the upcoming Lieutenant's make-up examination, and the giving of that examination to *Acha* class members.[5] Plaintiff alleges that the defendants are first holding a make-up examination after seven years solely for the benefit of the *Acha* plaintiffs.

■ Currently before the Court are plaintiff's motion to amend the complaint and defendant's cross-motion for summary judgment. (Plaintiff's request for a preliminary injunction was withdrawn after defendants asserted that there was no intent to conduct the make-up examination prior to September 1, 1980, and agreed to furnish plaintiff with 30 days prior written notice of such examination if this action were still pending.) We deal first with the summary judgment motion, which we examine in the context of all of plaintiff's allegations. In doing so, the Court is mindful of the fact that since no discovery has been conducted, summary judgment is appropriate only if plaintiff's allegations would fail to state a claim for relief even if proven to be true.

■ The Court notes at the outset defendants' argument that plaintiff's claim is barred by his failure to file a charge with the EEOC based upon the events stemming from the *Acha* settlement and the proposed make-up examination. Defendants' claim that the only charges filed with the EEOC relate to the alleged pre-1969 acts of discrimination and the seniority consequences flowing therefrom. It is true, of course, that the filing of a timely EEOC charge is generally treated as a jurisdictional prerequisite to the bringing of a Title VII law suit on the same claim. *See, e. g., Schick v. Bronstein*, 447 F.Supp. 333 (SDNY 1978). However, given the current posture of this law suit, the fact that plaintiff initially proceeded *pro se*, and the fact that plaintiff

---

4. At oral argument, counsel for defendants stated that it is not unusual to conduct a new examination simultaneously with a make-up examination, and that this practice may well be followed in this instance. Plaintiff asserted that he would be aggrieved even if permitted to take such a "new" examination if the defendants accorded to *Acha* class members who take the make-up examination priority in appointment over those who became eligible subsequent to 1973.

5. Despite his most recent contentions, the procedural history of this litigation suggests that plaintiff's aim is to remedy the discrimination he allegedly suffered prior to 1969 and to somehow acquire the seniority rights he would have had but for the defendants' pre-1969 acts. In May, 1976, plaintiff filed a charge with the EEOC alleging discrimination by the defendants based on sex. This charge was initially dismissed by the EEOC on grounds that it was not timely filed, whereupon plaintiff, on April 1, 1977, filed an amended charge of discrimination alleging the continuing nature of the alleged violation and asserting that discrimination based on gender had denied him "opportunities to take succeeding promotion examinations for ranks of lieutenant and captain". On November 22, 1977, the EEOC again dismissed the charge on the grounds that it was untimely filed. A Right to Sue Letter was issued on May 23, 1979 following which this action was commenced. The Court notes that it was only *after* this action was commenced that defendants announced their intention to hold the Lieutenant's make-up examination.

has already filed EEOC charges on closely related issues, the Court finds it appropriate to deal with the merits of the pending motions.

■ The Court's disposition of those motions is governed by the fact that, no matter how they are worded, plaintiff's claims relate only to alleged acts of discrimination which occurred prior to 1969, the operation of a bona fide seniority system,[6] and the valid settlement of an unrelated law suit to which plaintiff was not a party. The award, as a result of a court approved settlement decree, of retroactive seniority rights to women police officers who suffered "post-Act" discrimination is clearly not, in itself a violation of Title VII; nor does it in any way entitle plaintiff to a recomputation of his seniority rights absent some act of discrimination which occurred subsequent to March 24, 1972. To hold otherwise would make it virtually impossible for a defendant such as the City of New York to settle Title VII suits.

Moreover, neither the fact that some *Acha* class members will be allowed to take the Lieutenant's make-up examination nor the City's refusal to allow plaintiff to do so constitutes post-Act discrimination. This conclusion is not affected by plaintiff's assertion that there is a disputed issue of fact as to the City's purpose in giving the examination at this time.[7] Whatever the City's "purpose" in giving the examination, all those eligible to take it, including the *Acha* class members, will be eligible because they have enough seniority to have taken the 1973 examination, not because of their sex. Plaintiff will not be eligible for the make-up examination because he was not eligible for the 1973 examination, not because of his sex. Plaintiff thus makes no colorable claim that, at least since 1969, he has suffered from anything other than the effects of a bona fide seniority system. His proposed claim under § 1983 that defendants'

actions deprived him of equal protection under the law is similarly without merit since plaintiff has failed to set forth a legally cognizable claim of sex discrimination which occurred prior to the running of the three year statute of limitations.

To sum up, it is clear to the Court that plaintiff's claim involves the consequences of his not having been accorded retroactive seniority to compensate for the discrimination he allegedly suffered prior to 1969. Obviously, however, if every seniority based action taken by the defendants constituted a fresh act of discrimination against persons, such as the plaintiff, who allegedly suffered "pre-Act" discrimination, the holding of *Teamsters v. United States, supra,* would be totally undermined. We conclude, therefore, that even if the underlying purpose of scheduling a make-up examination with the eligibility requirements already described is to benefit eligible *Acha* class members, the conduct of that examination does not discriminate against the plaintiff on account of his sex and thus does not provide a basis for an employment discrimination claim. The conduct of such an examination would simply be a facially neutral act which deals with employees in accordance with seniority. It is inherent in any award of retroactive seniority that those who are not recipients of such an award will suffer a relative and competitive disadvantage. If an award of retroactive seniority did not mean that the recipients of such an award can assert priority over others, such an award would have little practical consequence. When plaintiff asserts that he, too, is a victim of sex discrimination and that it is inequitable that the *Acha* plaintiffs should be preferred over him, he is merely asserting that he suffers the lingering consequences of the discrimination against him which allegedly took place prior to 1969.

---

6. Plaintiff has at no time alleged that the Police Department's seniority system is not "bona fide" as that term is used in *Teamsters v. United States,* 431 U.S. 324, 348–355, 97 S.Ct. 1843, 1861–1864, 52 L.Ed.2d 396.

7. Plaintiff does not dispute that all those who were eligible to take the 1973 examination but who were absent for a reason specified under Rule 4.4.5., see note 2 *supra,* will be eligible to take the proposed make-up examination.

842.

In view of the foregoing analysis, it is unnecessary to defer action on the motion for summary judgment to enable plaintiff to conduct discovery with respect to the defendants' underlying intent in scheduling the make-up examination, nor would any purpose be served in permitting plaintiff to amend his complaint. Accordingly, the motion for leave to amend the complaint is denied. The motion for summary judgment is granted and the defendants are relieved from any restraint heretofore imposed with regard to the conduct of the Lieutenant's examination.

SO ORDERED.