■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent-Appellant, v NEW YORK CITY TRANSIT AUTHORITY, Appellant-Respondent. — In an action for equitable and legal relief brought on behalf of women bus drivers working for the defendant, New York City Transit Authority, defendant appeals (1) from an order of the Supreme Court, Kings County (Kartell, J.), dated September 30, 1981, which granted plaintiff's motion for a preliminary injunction and ordered defendant to administer a new examination and to establish a list of persons eligible for the position of surface line dispatcher, and (2) from so much of a further order of the same court (Adler, J.), dated December 11, 1981, as denied its motion to dismiss the complaint pursuant to CPLR 3211 (subd [a], pars 5, 7). Plaintiff cross-appeals from so much of the order dated December 11, 1981 as denied its motion for partial summary judgment. Appeal from the order dated September 30, 1981 dismissed as academic, without costs or

disbursements. Order dated December 11, 1981 modified, on the law, by deleting therefrom the provision denying defendant's motion to dismiss the complaint and substituting therefor a provision granting said motion. As so modified, order affirmed, without costs or disbursements. The Attorney-General brought this action on behalf of women bus operators employed by the defendant, New York City Transit Authority. The complaint alleges violations of section 296 of the Executive Law and section 11 of article I of the New York State Constitution. The Attorney-General alleged that defendant's use of seniority as a factor to be considered in making provisional and permanent appointments of bus operators to the position of surface line dispatcher was discriminatory because it "disproportionately disqualifies female drivers and perpetuates the prior discriminatory practices of [defendant]" in violation of section 296 (subd 1, par [a]) of the Executive Law. The Attorney-General does not allege that defendant's use of seniority in making appointments differentiates per se between similarly situated males and females on the basis of sex. The use of seniority in making appointments is neutral on its face. The only claim is that female bus drivers occupy a lower part on the seniority list than they rightfully should because of the defendant's prior discriminatory hiring practices. We conclude that Special Term erred in holding that defendant's earlier discriminatory practice was of a continuing nature so that the action was timely for the purposes of the one-year Statute of Limitations (see Executive Law, § 297, subd 5; 9 NYCRR 465.3 [e]). In *United Air Lines v Evans* (431 US 553), the Supreme Court held that a bona fide seniority system, neutral on its face and in its application, but which has an adverse impact on a group because of prior discriminatory practices, is not a continuing violation of the Civil Rights Law (US Code, tit 42, § 2000e-2, subd [a], par [2]; accord *Teamsters v United States,* 431 US 324; *American Tobacco Co. v Patterson,* 465 US 63; *Cates v Trans World Airlines,* 561 F2d 1064). We recognize that the Supreme Court in *United Air Lines v Evans (supra)* was influenced by title 42 (§ 2000e-2, subd [h]) of the United States Code which provides in pertinent part that "it shall not be an unlawful employment practice for an employer to apply different standards of compensation * * * privileges of employment pursuant to a bona fide seniority * * * system * * * provided that such differences are not the result of an intention to discriminate". Pertinent sections of New York's Civil Service Law recognize the long history of the role of seniority in the area of civil service employment and promotions. Thus, section 80 of the Civil Service Law provides that seniority governs which persons are first to be suspended or demoted and section 52 provides that due weight should be given to seniority for promotion purposes (see, generally, *Acha v Beame,* 438 F Supp 70, affd 570 F2d 57). The underlying legal wrong affecting the female bus drivers is not an alleged discriminatory use of seniority but a past discriminatory hiring system with present effects. As the court in *United Air Lines v Evans (supra,* p 558) noted "the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists." It is true that because the defendant barred women from filling bus operator positions until 1971 and effectively precluded them from gaining the position until 1978 by virtue of a 5-foot 4-inch height requirement, male bus operators have more seniority than female bus operators. A complaint which is premised upon these prior practices, however, is clearly time barred (see Executive Law, § 297, subd 5). Since the Attorney-General does not attack the operation of seniority, per se, but rather the *effect* of its use, no *present* violation of the Human Rights Law is alleged. Accordingly, Special Term erred in denying defendant's motion to dismiss the complaint. *Matter of Board of Educ. of Farmingdale Union Free School Dist. v New York State Div. of Human*

*Rights* (56 NY2d 257) is not to the contrary. In *United Air Lines v Evans* (*supra,* p 558) the Supreme Court specifically noted: "She has not alleged that the system discriminates against former female employees or that it treats former employees who were discharged for a discriminatory reason any differently from former employees who resigned or were discharged for a nondiscriminatory reason. In short, the system is neutral in its operation." In *Farmingdale,* however, the Court of Appeals noted (pp 261-262): "The seniority system devised by the Board purports to treat all teaching personnel equally, disallowing credit for service preceding any resignation. The system, however, does not take into account the only resignation that was forced — that of a pregnant nontenured teacher. The system thus imposes a distinct burden on a woman who became pregnant during service (cf. *Nashville Gas Co. v Satty,* 434 US 136), effectively penalizing her again for her prior pregnancy. The facially neutral system cannot mask the unfavorable employment consequences attendant only upon pregnancy." In the present case there is nothing to indicate that anything other than the operative neutrality of *Evans* rather than the masked discrimination of *Farmingdale* is present. We also note that unlike the teacher in *Farmingdale* who lost credit for years of completed service, the women herein merely complain that they were not given the opportunity to acquire completed service for years before 1978. We believe the dissenter errs in finding the need for a trial without first finding a present discriminatory effect in the facially neutral system. Absent a showing of present impropriety in using the long-established system that takes seniority into account, the action herein is time barred. If the use of seniority is improper as rejuvenating a past discrimination, seniority should not be used at all in the present promotional scheme at issue. No showing has been made, however, that the use of seniority creates a present wrong or is otherwise unacceptable. Purposeful discrimination must be shown to sustain the Attorney-General's claim based upon section 11 of article I of the State Constitution (*Personnel Administrator of Mass. v Feeney,* 442 US 256; *Washington v Davis,* 426 US 229; *Matter of 303 West 42nd St. Corp. v Klein,* 46 NY2d 686). The record does not contain any evidence of intentional discrimination by defendant in its use of seniority as a factor in making appointments. In light of our determination on the appeal from the order dated December 11, 1981, the appeal from the order dated September 30, 1981 is now moot. In addition the defendant is not making any further provisional appointments and has administered an examination for permanent appointments. A list will soon be published. On the facts of this case, then, the rights of the parties cannot be affected by the determination of the appeal from the order dated September 30, 1981. That order granted the preliminary injunction to enjoin the defendant from making further provisional appointments. The appeal from the order is thus moot for this additional reason (*Matter of Hearst Corp. v Clyne,* 50 NY2d 707). Gibbons and Thompson, JJ., concur.

Mangano, J. P., concurs in the result reached, in accordance with the following memorandum: I agree that the facts of this case are distinguishable from those in *Matter of Board of Educ. of Farmingdale Union Free School Dist. v New York State Div. of Human Rights* (56 NY2d 257) and that no present violation of the Human Rights Law is alleged in the case at bar. However, I cannot agree with the reliance on the Supreme Court's decision in *United Air Lines v Evans* (431 US 553) to support our holding. The facts in *Evans* are indistinguishable from those in *Farmingdale* and the holdings of those two cases are in direct conflict with each other. Therefore, *Evans* cannot be considered a viable precedent to support the holding in the case at bar. Accordingly, I concur only in the result.

O'Connor, J., concurs in part and dissents in part, with the following memorandum: In this action by the Attorney-General, defendant is accused of using seniority as a criterion for a promotional position in such a way as to discriminate unlawfully against women on the basis of gender. The People allege that the coveted civil service title of dispatcher is both an entry-level position for management and a promotional position for bus operators with at least a year's experience. Women were excluded entirely from the bus operator title until 1971 and until 1976 a height requirement excluded more than half the adult female population but only about 4% of the adult male population. The first women operators were hired in 1978, years after the prior competitive promotional examination for dispatcher had been conducted. There were no women among the defendant's 500 dispatchers at the time of the commencement of this action. Plaintiff alleged that provisional appointments were being made on the basis of seniority and that permanent appointments were to be made on the basis of a competitive examination (50%), performance (35%) and seniority (15%). Plaintiff concluded that defendant's "use of seniority as a bus operator as a criteria [*sic*] for provisional and permanent appointment" to the dispatcher title violated the Executive Law and the New York constitutional guarantee of equal protection of the laws. Plaintiff sought injunctive relief designed to create an eligible list for permanent appointments that would not discriminate against women and also sought compensatory relief for the alleged discriminatory practice. A preliminary injunction issued against further use of seniority in making provisional appointments, and a trial was ordered to determine whether seniority could lawfully be used, alone or in combination with other factors, for purposes of making permanent appointments. Since a competitive examination has been administered and no further provisional appointments are being made, the appeal from the grant of a preliminary injunction is now moot. But the direction for a trial contained in the original order, as superseded and continued by the subsequent order's denial of a motion to dismiss the complaint and of a cross motion for partial summary judgment, was proper. In my opinion there are issues of fact here warranting a trial. As discussed in the opinion of Special Term (Kartell, J.), the Court of Appeals in *Matter of Sontag v Bronstein* (33 NY2d 197, 200-201) ruled that the employer bears the burden of showing that hiring criteria bear a rational relation to, and act as valid predictors of, job performance when they adversely affect equal employment opportunity, even if no discriminatory intent is alleged and the criteria are facially neutral. Noting that seniority would weigh only 15% in the making of permanent appointments, but also noting that the least senior provisional appointee had 18 years' experience, Special Term held that there was a question of fact whether the 15% weighting for seniority would be unlawful under the circumstances. I agree. The issue here is not the lawful or unlawful character of defendant's past employment practices respecting women, but the lawfulness of its criteria in making the eligible list for permanent appointments to this promotional title that is also the entry-level title for management. It is alleged that one of the announced criteria — seniority — is sufficiently weighted in the selection process so as to exclude women disproportionately to their merit and fitness for the position. Obviously seniority serves a valid dual purpose here. It serves — to a degree — as a demonstration of fitness; it also serves as an incentive to the recruitment and retention of qualified civil servants. Yet the State's policy of remedying discriminatory employment practices is "fundamental" (*Matter of Board of Higher Educ. v Carter,* 14 NY2d 128, 144) and its constitutional mandate (NY Const, art I, § 11) is of no less dignity than the constitutional mandate for basing the civil service system upon "merit and fitness" (NY Const, art V, § 6).

It would be absurd to argue that seniority's incentive value *alone* should blunt the constitutional mandate to interdict discrimination. To do so would be to deem the incentive value to be some sort of property right, like deferred compensation, vested in male bus operators hired before the defendant recognized that its moral wrong in discriminating against women was a legal wrong as well. But there is no such vested right, and for the defendant to gratuitously honor the expectations of its senior male bus operators at this point in time would be nothing less than a perversion of its present legal duty to provide equal opportunity of promotion to this entry-level management position without regard for gender. Defendant's handicapping of its women bus operators may not serve any legitimate incentive scheme; the promotion sought here apparently cannot be passively inherited as some perquisite of longevity, but must be competitively pursued as an entirely new employment opportunity — one with duties significantly different from operating buses. In other words, the complaint here raises the issue whether, given the runners' varying training and talents, there is any reason why the starting blocks should not be evened up before the gun sounds despite the head start expected by some runners who were in the race before the rules were changed to admit the distaff side into the competition (cf. *Matter of Board of Educ. v New York State Div. of Human Rights,* 56 NY2d 257). I believe the legal propriety of defendant's weighting seniority as 15% of the ranking decision for the list of eligibles must await trial to ascertain the precise role it plays in predicting job performance and the degree to which its role as an incentive for recruiting and retaining bus operators and dispatchers deprives women of their right to equal employment opportunity. Accordingly, I vote to affirm the denial of the motion to dismiss the complaint and the cross motion for partial summary judgment.