EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff-Appellee,

v.

SAFEWAY STORES, INC.; Denver Retail
Grocers & Retail Clerks Union Local No.
7; Amalgamated Meat Cutters and
Butcher Workmen of North America,
AFL–CIO, Local No. 634; the Interna-
tional Union of Operating Engineers
Local Union No. 1; Delivery Drivers,
Warehousemen and Helpers, Local Un-
ion No. 435; Milk Drivers and Dairy
Employees Local Union No. 537; and
Warehouse and Distribution Employees
Union, Local Union No. 452, Defend-
ants-Appellees,

v.

Howard COURTWRIGHT; Sam Cutrell;
Richard Cyr; Jim Doyle; Carl Gustaf-
son; Gene Hines; Terry Huckins; Don
Peters; Roger Pierce; Eldon Rhodes;
Joe Rielly; Jon Scroggins; Dennis
Smith; Wayne Stallsworth; Gene Tug-
gle; Paul Ullerich; and Fred Woolsey,
Intervenors-Appellants.

No. 78–1138.

United States Court of Appeals,
Tenth Circuit.

Dec. 5, 1979.

John A. Criswell of Criswell & Patterson, Englewood, Colo., for intervenors-appellants.

Martin D. Buckley of Hornbein, MacDonald & Fattor, Denver, Colo., for defendant-appellee Delivery Drivers, Warehousemen and Helpers, Local Union No. 435.

Gregory A. Eurich of Holland & Hart, Denver, Colo. (Richard W. Comfort, Jr., Denver, Colo., on brief), for defendant-appellee Safeway Stores.

Marilyn S. G. Urwitz, Washington, D. C. (Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, and Beatrice Rosenberg, Asst. Gen. Counsel, Washington, D. C., on brief), for plaintiff-appellee Equal Employment Opportunity Commission.

Walter C. Brauer, III, of Brauer & Simons, Denver, Colo. (Thomas B. Buescher, Denver, Colo., on brief), for defendant-appellee Amalgamated Meat Cutters and Butcher Workmen of North America Local No. 634.

Before SETH, Chief Judge, and McWILLIAMS and McKAY, Circuit Judges.

McKAY, Circuit Judge.

This action was instituted by the Equal Employment Opportunity Commission (EEOC) pursuant to § 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–5(f), (g), alleging unfair employment practices by Safeway Stores, Inc. After the filing of initial pleadings, EEOC, Safeway and the various labor unions made up of Safeway employees joined as defendants pursuant to Fed.R.Civ.P. 19(a)(2) entered into a lengthy consent decree. Among other things, the decree provided for a change in the calculation of seniority upon transfer from one Safeway labor unit to another: "[W]hen a vacancy occurs, an employee may transfer laterally to another job classification . . . for which he or she is qualified or qualifiable without loss of seniority. Selection of applicants for transfer shall be based upon seniority with the Company." Record, vol. 1, at 28, ¶ VIII. C. "Seniority" is defined in the decree as "the length of continuous employment with the Company computed from the date the employee first reports for work" in any Safeway labor unit (company seniority). Record, vol. 1, at 17, ¶ I–C–6. In contrast, the various collective bargaining agreements with Safeway provided that seniority would be measured by the length of an employee's service "within the bargaining unit" (unit seniority). Supplemental Record at 31. Therefore, the decree modified the existing seniority system to allow transfers between job classifications, and therefore between bargaining units, without the loss of seniority accrued since the original date of hire with Safeway.

Safeway initially construed the consent decree to grant company seniority to all of its employees. One of the involved unions, Delivery Drivers, Warehousemen and Helpers, Local Union No. 435, petitioned the district court to enjoin Safeway from acting on this interpretation, and Safeway requested clarification of the decree regarding the seniority provisions. In response, the district court entered an "Order Interpreting the Consent Decree and Granting Injunctive Relief." In pertinent part, that order determined: "The Decree mandates that the seniority of all employees who have transferred from one job . . . to another *since the effective date of the Decree* is to be computed for all purposes . . . on a company-wide basis." Record, vol. 1, at 171 (emphasis added).

Shortly after the entry of this order, 17 individual members of Local 435 were allowed to intervene in the suit. The interve-

nors had transferred from another Safeway job into Local 435 prior to the date of the consent decree and, under the court's interpretation of the decree, they would not be credited with company seniority. Accordingly, their seniority status was adversely affected by the enhanced seniority of post-decree transferees, many of whom had no more claim to Title VII protection than intervenors.[1] In a motion for modification, intervenors insisted that either all employees be accorded company seniority or that only minority members retain seniority advantages upon transfer.[2]

In denying the intervenors' motion, the district court indicated that it would be willing to modify the decree only upon a strong showing:

(1) that the goals of the Decree would be substantially furthered by such a modification, or (2) that the harm to [the intervenors] outweighs (a) the benefits to minority employees from prospective application of the transfer provisions of the Decree, and (b) any harm that may result from retroactive application of these provisions.

Record, vol. 1, at 181. In addition, the court ordered the parties to meet in an attempt to agree on a modification. When the parties failed to agree or to convince the court of a compelling need for modification, intervenors' further motion for modification was denied, forming the basis of this appeal.

While this appeal was pending, all parties stipulated to certain amendments of the original consent decree. Pursuant to this stipulation, the right to retain company seniority upon transfer terminated on July 1, 1978, approximately a year and a half after the entry of the decree. Those who transferred after the date of the decree but before this amendment became effective retained company seniority.

## I.

■■■ We consider preliminarily whether the district court erred in interpreting the language of the consent decree to afford company seniority only to post-decree transferees. It is clear that the enforcing court has power to interpret a decree when its language results in confusion. *See Pasadena City Board of Education v. Spangler,* 427 U.S. 424, 438, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976). *Ridley v. Phillips Petroleum Co.,* 427 F.2d 19 (10th Cir. 1970), demonstrates the breadth of a court's discretion in constructing decrees. We held there that a court should adopt an interpretation which renders the judgment "more reasonable, effective, and conclusive." *Id.* at 23 (quoting *Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co.,* 137 F.2d 871 (6th Cir. 1943), *cert. denied,* 320 U.S. 800, 64 S.Ct. 431, 88 L.Ed. 483 (1944)).

The district court's interpretation of the seniority provisions of this consent decree was reasonable in light of the language and purpose of the decree.[3] The interpretation thus becomes *pari materia* with the decree for purposes of this opinion.

## II.

■■■ There are two channels through which a consent decree may later be modi-

1. One of the intervenors is black and, as of the last available data, two of the post-decree transferees into Local 435 were Spanish-surnamed. All others are white males. Apparently, not all of the intervenors were in fact disadvantaged in the seniority system by transfers under the decree. The evidence on both the numbers and makeup of affected intervenors and protected transferees is grossly incomplete, but resolution of these specifics is not necessary to the conclusion we reach. ·

2. Intervenors do not contend that their interests were not fairly represented by Local 435 in the negotiation of the consent decree. *See* Brief for Intervenor-Appellants at 29 n.10. *See also Bolden v. Pennsylvania State Police,* 578 F.2d 912, 918 (3d Cir. 1978).

3. Even if the interpretation of the district court is viewed as a substantive change in the intention expressed by the original decree rather than a mere clarification, such an interpretation is within the court's power under the very doctrines the intervenors seek to have us apply in this appeal.

fied.[4] Rule 60(b) allows for relief from a final judgment, order or proceeding upon a showing that "the judgment is void," that "it is no longer equitable that the judgment should have prospective application," or for "any other reason justifying relief." Fed. R.Civ.P. 60(b)(4), (5), (6). In addition, a court of equity has continuing jurisdiction to modify a decree upon changed circumstances, even if the decree was entered by consent. *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). However, a court's power to modify is not to be lightly exercised to change the settled terms of a consent decree. An appellate court must be particularly reluctant to alter a decree because the entering court has broad discretion in the administration of such decrees. *See Franks v. Bowman Transportation Co.,* 424 U.S. 747, 763–64, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *EEOC v. American Telephone & Telegraph Co.,* 556 F.2d 167, 178 (3d Cir. 1977), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3145, 57 L.Ed.2d 1161 (1978); *United States v. Allegheny-Ludlum Industries, Inc.,* 517 F.2d 826, 850 (5th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); *West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1085–86 (2d Cir.), *cert. denied,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). A trial court's ruling on a Rule 60(b) motion will not be disturbed by this court absent an abuse of discretion. *Winfield Associates, Inc. v. Stonecipher,* 429 F.2d 1087, 1090 (10th Cir. 1970).

Intervenors' first objection to the decree is that a grant of enhanced seniority rights to all post-decree transferees rather than to all employees or to minority transferees only does not fulfill any legitimate purpose of Title VII. We agree that the purpose of Title VII is to secure relief to members of a class—those who may be subject to employment discrimination "on the basis of race, color, religion, sex, or national origin."[5] 42 U.S.C. § 2000e–2. But to argue that the terms of a consent decree may not vary from the statutory limits of Title VII[6] is to misconceive the nature of consent decrees and to ignore the strong policy embodied in Title VII in favor of voluntary settlements.[7] *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *United States v. Allegheny-Ludlum Industries, Inc.,* 517 F.2d 826 (5th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). Of course, the statute may provide the broad outlines of the objectives to be reached and the mechanisms to be used. This court would not countenance governmental coercion in directions wholly outside the purview of congressional pronouncement under the aegis of consent decree negotiations.

It is not the purpose of Rule 60(b) or the inherent powers of chancery to allow the modification of a consent decree merely because it reaches a result which could not

---

4. The intervenors do not suggest the procedural approach upon which they rely.

5. Title VII actions can be brought for the benefit of a potential class of discriminatees rather than for merely those who can prove they were actual victims of discrimination. *See United States v. Navajo Freight Lines,* 525 F.2d 1318, 1324–26 (9th Cir. 1975).

6. Some victims of discrimination within the target of Title VII may not be readily identified—*i. e.,* those hampered in employment opportunities by their religious affiliation or national origin. Consequently, we are unable to detect from intervenors' figures how many of the post-decree transferees were actually within the literal scope of Title VII. Some broadening of apparent class limits may be necessary to reach all those affected.

7. At the core of this consent decree is an agreement between Safeway and the unions reached in an attempt to comply with Title VII. Some comparison can be made to a collective bargaining agreement which, according to the Supreme Court, "may go further, enhancing the seniority status of certain employees for purposes of furthering public policy interests beyond what is required by statute, even though this will to some extent be detrimental to the expectations acquired by other employees under the previous seniority agreement." *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 778–79, 96 S.Ct. 1251, 1271, 47 L.Ed.2d 444 (1976) (citing *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)).

have been forced on the parties through litigation. For example, in *V. T. A., Inc. v. Airco, Inc.,* 597 F.2d 220 (10th Cir. 1979), this court upheld a consent decree against a Rule 60(b)(4) attack. The appellant claimed that the relief afforded by the consent decree was in violation of federal patent law and was therefore void. This court responded that "[e]ven if the parties' consent decree does technically run afoul of federal patent law principles, the problem would be one of relief from an erroneous judgment, not a void one." *Id.* at 226. We held that Rule 60(b)(4) "is not available to correct mere legal error." *Id. See also Mayberry v. Maroney,* 558 F.2d 1159, 1164 (3d Cir. 1977). In *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), the Supreme Court held that an "injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making." *Id.* at 119, 52 S.Ct. at 464. The fact that a consent decree exceeds the law by prohibiting lawful conduct, *Swift & Co. v. United States,* 276 U.S. 311, 328–31, 48 S.Ct. 311, 72 L.Ed. 587 (1928), or by granting an unauthorized remedy, *Walling v. Miller,* 138 F.2d 629 (8th Cir. 1943), *cert. denied,* 321 U.S. 784, 64 S.Ct. 781, 88 L.Ed. 1076 (1944), does not render it void. Such efforts may be grounds for reversal on appeal of the judgment, but they are not grounds for collateral attack.

Although a consent decree will not be vacated merely because it is legally erroneous, it may be altered upon a showing of changed circumstances which have produced "hardship so extreme and unexpected" as to make the decree oppressive. *United States v. Swift & Co.,* 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999 (1932); *S. E. C. v. Jan-Dal Oil & Gas, Inc.,* 433 F.2d 304, 305 (10th Cir. 1970); *Ridley v. Phillips Petroleum Co.,* 427 F.2d 19, 22 (10th Cir. 1970). We find no abuse of discretion in the district court's determination that this decree was not rendered inequitable by changed circumstances. There is no evidence indicating that the facts—*e. g.,* the nature and makeup of Safeway employees and operations—against which the decree and the interpreting order were framed have substantially changed.

### III.

Intervenors assert an additional ground for impeaching the consent decree. They argue that *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), decided after the decree and interpretive order were entered, compels modification. In interpreting § 703(h) of Title VII, the Supreme Court in *Teamsters* held that "an otherwise neutral, legitimate seniority system does not become unlawful under Title VII simply because it may perpetuate pre-Act discrimination." *Id.* at 353–54, 97 S.Ct. at 1864. We are not obliged to decide for this appeal what impact *Teamsters* would have on a consent decree reached after *Teamsters* was decided or on the outcome of subsequent litigation between these parties. We decide only that *Teamsters* does not require retroactive alteration of the consent decree in this case.

A similar situation was presented in *Collins v. City of Wichita,* 254 F.2d 837 (10th Cir. 1958). After the original judgment in *Collins* became final, the Supreme Court reviewed, in another case, the statute upon which the judgment was based and found it unconstitutional. In denying a Rule 60(b) motion based on the subsequent Supreme Court decision, this court held, "A change in the law or in the judicial view of an established rule of law" is not an extraordinary circumstance justifying relief. *Id.* at 839. The Third Circuit confronted a similar change in the case law on a Rule 60(b) motion in *Mayberry v. Maroney,* 558 F.2d 1159 (3d Cir. 1977). It concluded that the power to alter decrees "does not contemplate relief based merely on precedential evolution." *Id.* at 1164. *See also Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940).

There are some situations where a change in the law warrants modification of an injunctive decree. For instance, in *System*

*Federation No. 91 v. Wright,* 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961), the Supreme Court balanced the policies of finality and flexibility and determined that an amendment of the statute underlying an earlier decree made prospective enforcement of the decree inequitable. However, it was the prospective injunctive effect of the decree at issue in *System Federation.* The Court did not purport to erase retroactively the effect of the decree.

Other cases have held that a significant judicial clarification of the law will justify altering the future application of a decree in compelling circumstances. *See Pasadena City Board of Education v. Spangler,* 427 U.S. 424, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976); *City & County of Denver v. Denver Tramway Corp.,* 187 F.2d 410, 417 (10th Cir. 1951); *Coca-Cola Co. v. Standard Bottling Co.,* 138 F.2d 788 (10th Cir. 1943). No attempt was made in these cases to undo the effects of past enforcement.[8] In contrast, intervenors seek only the unraveling of seniority already assigned to employees who transferred in reliance on the decree. Because the decree has now been amended to delete the transfer provisions, future application of the decree is no longer in issue.

There is one additional reason why *Teamsters* does not compel our alteration of the seniority provisions of this decree. *Teamsters* prohibits abrogation of a seniority system only if that system is bona fide.[9] Because this case was never litigated, there has been no determination that Safeway's seniority system is bona fide. Intervenors would have us assume at this point the system was bona fide, or at the least, remand the case for a hearing and determination. This we decline to do. The policy of voluntary settlement so important to the enforcement of Title VII would be seriously undermined if the approving court were required to establish the facts underlying the parties' positions before approving a consent decree. The power to compromise exists partially because of the uncertainties and expense typical of adversary hearing and judicial determinations of fact. *West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1085–86 (2d Cir.), *cert. denied,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). We concur with the district court, "A Consent Decree would be worthless if it could be attacked on the ground that had the Court made a particular determination, such relief would then not be statutorily available." Record, vol. 2, at 213.

We are unconvinced that the intervenors should obtain the extraordinary relief they request. The district court did not abuse its discretion in administering the decree.

AFFIRMED.

---

8. *Spangler* differs from the instant case in one other significant way. In *Spangler* the Supreme Court decision which cast doubt on the propriety of continued enforcement of the consent decree as interpreted was decided after the entry of the original decree but before the offending interpretation. The question in *Spangler,* therefore, was not whether a subsequent case requires modification of an interpretive order already made final.

9. In *Acha v. Beame,* 438 F.Supp. 70 (S.D.N.Y. 1977), *aff'd,* 570 F.2d 57 (2d Cir. 1978), for instance, the court determined that *Teamsters* required Rule 60(b) relief from an injunction when, during the course of the litigation which produced the injunction, it had been determined that the seniority system involved was "facially neutral . . . and followed the . . . dictates of" state law. 438 F.Supp. at 73.