BARRETT, Circuit Judge.
 

 Within these consolidated appeals, Richard Lee Eckel and Lois Thelma Eckel (Eck-els), d/b/a Whispering Downs Arena and Turf Club (Whispering Downs) appeal from the district court’s affirmance of a bankruptcy court’s denial of discharge in bankruptcy of certain debts of the Eckels and the denial of their motion for relief from judgment under Fed.R.Civ.P. 60(b)(5) and (6).
 

 The Eckels were the owners and developers of Whispering Downs, an equestrian facility located on sixty acres in Johnson County, Kansas. In developing the facility, the Eckels entered into a lease agreement with LeaseAmerica Corporation whereby LeaseAmerica would purchase a sound system and 400 portable stalls for Whispering Downs and lease them to the Eckels.
 

 The sound system for Whispering Downs was purchased from David Beatty, doing business as David Beatty Stereo, for $18,-484.00. LeaseAmerica paid for the system by issuing a check for the full amount payable to Richard Eckel and Beatty after receiving a letter from Beatty indicating that a sound system costing $18,484.00 had been installed at Whispering Downs. The stalls for the facility were purchased from Harold Krug, owner of Perm-A-Flex Stalls for $183,200. LeaseAmerica paid for the stalls by issuing a check for the full amount to Krug. Unknown to LeaseAmerica, the sound system installed had an actual cost of $7,810.00 and Eckel, after paying that amount to Beatty, retained the remaining $10,674.00. Similarly, the stalls purchased from Krug had an actual cost of $159,600 and Krug, upon receipt of LeaseAmerica’s payment, gave Eckel a check for the difference, or $23,600.00.
 

 On June 17, 1975, the Eckels filed a petition under Chapter XI of the Bankruptcy Act. Subsequently their action was converted to a straight bankruptcy listing numerous creditors, including LeaseAmerica. On October 8, 1976, LeaseAmerica timely filed its complaint to determine the dis-chargeability of the Eckels’ lease obligations and the $10,674 retained by the Eckels in conjunction with LeaseAmerica’s purchase of the sound system. Within its corn-
 
 *1472
 
 plaint, LeaseAmerica alleged that Eckels had knowingly made false representations relative to the cost of the sound system, that the false representations were made for the purpose of defrauding LeaseAmeri-ca and inducing it to enter into the lease agreement, and that, accordingly, the $10,-674.00 retained by the Eckels was a non-dis-chargeable debt under the Act. By a second amended complaint filed on January 14, 1977, LeaseAmerica challenged the dis-chargeability of the $23,600 Eckel received from Krug.
 

 A trial before the bankruptcy court extended over March 7, 8, 14 and 15, 1978. On February 13,1980, the bankruptcy court entered its memorandum opinion, finding: Eckels’ lease obligations to LeaseAmerica were dischargeable debts; Eckels retained the $10,674.00 and $23,600.00 and converted it to their own use; “the conversion of the $10,674.00 and $23,600.00 ... was willful and malicious within the ... Act; it was done knowingly and intentionally without just cause or excuse”; the actions of the Eckels did not warrant the award of punitive damages; and the $10,674.00 and $23,-600.00 were non-dischargeable debts. On April 28, 1980, Eckels appealed to the district court.
 

 On May 25, 1981, LeaseAmerica and David Beatty entered into a compromise settlement and release in full, thereby settling a state court action initiated by Lease-America against Beatty for damages in the amount of $10,674.00. Under the settlement, Beatty agreed to pay LeaseAmerica $3,750 and court costs. LeaseAmerica gave Beatty a complete release for “any claims relating to or arising out of the sale and/or installation (or failure to perform in relation thereto) of the public address system for Whispering Downs Turf Club and Arena and/or transactions between Lease-America and Rich Eckel or others”.
 

 On September 25, 1981 the district court entered its memorandum opinion affirming the judgment of the bankruptcy court. The district court found: the bankruptcy court did not err in allowing LeaseAmerica to amend its complaint inasmuch as the amended complaint referred to the same chattels, consideration, and transaction and there was no evidence of prejudice; the bankruptcy court’s findings of willful and malicious conversion were not clearly erroneous; and that substantial right and justice were not offended in the bankruptcy court’s conclusion that the debts were not dischargeable.
 

 On October 30, 1981, Eckels moved, pursuant to rule 60(b)(5) and (6) for relief from that portion of the bankruptcy court’s judgment, as affirmed by the district court, finding the $10,674.00 to be non-dischargea-ble. In support thereof the Eckels argued that the compromise settlement and release in full executed by LeaseAmerica and Beatty on May 25, 1981 constituted the unconditional release of a joint tortfeasor (Beatty) and that under the law of Kansas, the unconditional release of one tortfeasor acts as an unconditional release of all joint tort-feasors.
 

 On December 14, 1981, the district court entered an order denying Eckels’ motion, finding: Kansas law clearly provides that an unconditional release by an injured party of one joint tortfeasor releases all joint tortfeasors; the doctrine of release of joint tortfeasors did not apply to the Eckels; during the bankruptcy proceedings it was determined that portions of Eckels’ debts relative to the sound system and stalls were not dischargeable because of willful and malicious conversion of some of the funds; the agreement between LeaseAmerica and Beatty did not affect that indebtedness found nondischargeable by the bankruptcy court; the Kansas rule regarding release of joint tortfeasors, predicated on the proposition that an injured party can have but one satisfaction for the same wrong, is distinguishable in that the Eckels, prior to the settlement, were already under an obligation to LeaseAmerica by virtue of the bankruptcy court’s order; the release given to Beatty by LeaseAmerica subsequent to the decision of the bankruptcy court did not
 
 *1473
 
 “absolve the actions of the Eckels which made portions of the debt nondischargeable”; and that, to grant relief to the Eck-els would be to excuse them from any accountability despite willful and malicious conversion of funds, “the very acts which under the law made the indebtedness non-dischargeable.”
 

 On appeal the Eckels contend: (1) the bankruptcy court erred in allowing Lease-America to amend its complaint; (2) the bankruptcy court erred in finding that they had willfully and maliciously converted LeaseAmerica’s property; (3) the bankruptcy court’s findings of fact and conclusions of law were inadequate; (4) the district court erred in affirming the bankruptcy court; and (5) the district court erred in denying their rule 60(b) motion.
 

 I.
 

 Eckels contend that the bankruptcy court erred in allowing LeaseAmerica to amend its complaint.
 

 LeaseAmerica’s original complaint challenged the dischargeability of the Eckels’ lease obligations for the sound system and stalls and the $10,674.00 retained by the Eckels in conjunction with LeaseAmerica’s purchase of the sound system. LeaseAmer-ica’s second amended complaint also challenged the dischargeability of the $23,600.00 the Eckels received from Krug as a result of LeaseAmerica’s purchase of the portable stalls. The Eckels’ motion to dismiss Lease-America’s second amended complaint as an attempt to inject new claims into the proceedings in an untimely manner was denied by the bankruptcy court.
 

 On appeal, the district court, in upholding the granting of leave to file an amended complaint, found:
 

 Briefly, appellee’s first complaint was a claim that certain debts not be discharged in bankruptcy because of Richard Eckel’s acts in securing funds for the sound system and portable horse stalls. Appellee’s amended complaint referred to the same chattels, the same consideration, and the transaction which was the basis for the original complaint. Eckel was on notice of the action and the surrounding circumstances. Further there is no evidence of prejudice. After review of the pleadings and record, this court is of the opinion that the bankruptcy judge did not err in granting permission to amend.
 

 [R., Vol. I at p. 251],
 

 The determination of whether to grant or deny leave to amend is within the discretion of the court and the court’s decision relative to an amendment is subject to reversal only for abuse of that discretion.
 
 Lewis v. Curtis,
 
 671 F.2d 779 (3rd Cir.1982),
 
 cert.
 
 denied, - U.S. -, 103 S.Ct. 176, 74 L.Ed.2d 144;
 
 Waits v. Weller,
 
 653 F.2d 1288 (9th Cir.1981);
 
 Polin v. Dun & Bradstreet, Inc.,
 
 511 F.2d 875 (10th Cir.1975);
 
 R.E.B., Inc.
 
 v.
 
 Ralston Purina Co.,
 
 525 F.2d 749 (10th Cir.1975). Leave to amend a complaint shall be freely granted when justice requires.
 
 Foman v. Davis,
 
 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962);
 
 McGoffin v. Sun Oil Company,
 
 539 F.2d 1245 (10th Cir.1976). However, leave to amend will be denied if it would be prejudicial to the opposing party.
 
 Rio Rancho Estates, Inc. v. Beyerlein,
 
 662 F.2d 700 (10th Cir.1981).
 

 Leave to amend in a straight bankruptcy proceeding is “freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.”
 
 Matter of Commonwealth Corporation,
 
 617 F.2d 415, 420 (5th Cir.1980). The court in
 
 Commonwealth, supra,
 
 further stated:
 

 The reason for liberality in permitting a late-filed amendment to a proof of claim, subject to the restrictions described above, is that “[a] bankruptcy court ... sits as a court of equity, duty bound to examine each claim to see that injustice is not done and that all claims are fairly considered.”
 
 Leach v. SBA (In re Crown Cabinets, Inc.),
 
 488 F.2d 91, 92 (5th Cir.1973). The Supreme Court described the
 
 *1474
 
 equity powers of bankruptcy courts and the objectives of the use of such equity powers as follows:
 

 The bankruptcy courts have exercised these equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. They have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.
 

 Pepper v. Litton,
 
 308 U.S. 295, 304-05, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939) (footnote omitted).
 

 617 F.2d at p. 421.
 

 We hold that the district court did not err in affirming the bankruptcy court’s decision granting LeaseAmerica permission to amend its original claims. We agree with the district court that the amended complaint referred “to the same chattels, the same consideration, and the same transaction which was the basis for the original complaint.” Consequently, the bankruptcy court’s allowance of the amendment did not prejudice Eckels and was necessary to insure that all claims were fairly considered. Leave to amend was properly granted.
 

 II.
 

 Eckels contend that the bankruptcy court erred in finding that their actions gave rise to a malicious and willful conversion of Lease America’s property. We note at the outset that the findings of the bankruptcy judge will not be disturbed on appeal unless clearly erroneous.
 
 Matter of Stafos,
 
 666 F.2d 1343 (10th Cir.1981),
 
 cert. denied,
 
 456 U.S. 1007, 102 S.Ct. 2299, 73 L.Ed.2d 1302;
 
 In re White House Decorating Co.
 
 v.
 
 Eckles,
 
 607 F.2d 907 (10th Cir.1979).
 

 As set forth
 
 supra,
 
 the bankruptcy court found that the Eckels’ retention of the $10,-674.00 and $23,600.00 was a willful and malicious conversion under the Bankruptcy Act and that it was done knowingly and intentionally without just cause or excuse. In making this determination the bankruptcy court relied specifically on
 
 Adams Chevrolet Co., Inc. v. John Carey Bolinger,
 
 No. 76-1221, slip op. at 4r-5 (10th Cir. July 28, 1976) (unpublished) in which we held:
 

 The terms “willful” and “malicious” do not necessarily mean personal hatred, spite or ill will. If the act is performed intentionally and necessarily produces harm, it may constitute willful and malicious behaviour if it is without just cause or excuse.
 
 McIntyre v. Kavanaugh,
 
 242 U.S. 138 [37 S.Ct. 38, 61 L.Ed. 205] (1916);
 
 Bennett v. W.T. Grant Company,
 
 481 F.2d 664 (4th Cir.1973). 1A Collier on Bankruptcy (14th ed.) para. 17.17, at 1653-54, states the rule as follows: .. . Injuries within the meaning of the exception are not confined to physical damage or destruction; but an injury to intangible personal or property rights is sufficient. Thus the conversion of another’s property without his knowledge or consent, done, intentionally and without justification and excuse, to the other’s injury, is a willful and malicious injury within the meaning of the exception.
 

 We hold that the bankruptcy court did not err in finding malicious and willful conversion. It is uncontested that Lease-America paid $18,484.00 to Beatty and Eckels for a $7,810.00 sound system and that Eckels thereafter retained $10,674.00. It is also uncontested that LeaseAmerica paid Krug $183,200.00 for $159,600.00 worth of stalls, and that Krug thereafter remitted $23,600.00 to Eckels. There was evidence that both actions were done intentionally and without the knowledge or consent of LeaseAmerica. Under such circumstances we will not overturn the bankruptcy court’s findings that Eckels’ actions gave rise to a malicious and willful conversion of the $10,-674.00 and $23,600.00.
 

 III.
 

 Eckels contend that the district court erred in denying their motion for relief from judgment under Fed.R.Civ.P. 60(b)(5) and (6). Specifically, the Eckels contend that the compromise settlement and release in full effectuated by LeaseAmerica and
 
 *1475
 
 Beatty constituted the unconditional release of a joint tortfeasor and that under the law of Kansas, the unconditional release of one tortfeasor acts as an unconditional release of all joint tortfeasors.
 

 In denying the Eckels’ motion, the district court found:-
 

 After full hearings concerning the debts and obligations of the Eckels to Lease-America and the actions of Richard Eck-el, the bankruptcy court held that portions of the debts with respect to the sound system and the horse stalls were nondischargeable because of willful and malicious conversion of some of the funds.
 

 In our view LeaseAmerica and Beatty’s agreement to settle their differences does not affect that part of the indebtedness found nondischargeable by the bankruptcy court. The Kansas rule regarding release of joint tortfeasors is bottomed on the proposition that an injured person can have but one satisfaction for the same wrong.
 
 Sade [v. Hedstrom,
 
 205 Kan. 514, 471 P.2d 340],
 
 supra,
 
 at 523, 524. The situation here is clearly distinguishable in that the Eckels were already under an obligation to LeaseAmerica by virtue of the bankruptcy court’s order. The preexisting debt, to the extent it was found nondischargeable, still remains. The release given Beatty by LeaseAmerica subsequent to the bankruptcy judge’s decision does not absolve the actions of the Eckels which made portions of the debt nondischargeable. For us to grant the relief requested would mean that the Eckels would be excused from any accountability despite their “willful and malicious conversion” of funds — the very acts which under the law made the indebtedness nondischargeable.
 

 [R., Vol. I at pp. 17-18].
 

 The decision whether relief should be granted under rule 60(b) is discretionary and the ruling should not be disturbed except for a manifest abuse of discretion.
 
 Security Mutual Casualty Company v. Century Casualty Company,
 
 621 F.2d 1062 (10th Cir.1980);
 
 Equal Employment Opportunity
 
 [32]
 
 Commission v. Safeway Stores, Inc.,
 
 611 F.2d 795 (10th Cir.1979),
 
 cert. denied,
 
 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 809 (1980);
 
 Chief Freight Lines Company v. Local Union No. 886,
 
 514 F.2d 572 (10th Cir.1975).
 

 We hold that the district court’s denial of the Eckels’ motion did not constitute a manifest abuse of discretion. It is uncontested that prior to the settlement between LeaseAmerica and Beatty that the Eckels were obligated to LeaseAmerica by virtue of the bankruptcy court order. It is also uncontested that LeaseAmerica’s state suit against Beatty was filed in Missouri and not Kansas, the Eckels’ state of residence; the Eckels were not a party to the Missouri lawsuit and did not appear; and the Eckels were not represented by counsel during the course of the Missouri court proceedings. Nothing in the record before us supports the Eckels’ bald assertion that they were actually joint tortfeasors in the Missouri action or that the settlement and release in full effectuated between the parties in Missouri was binding upon the federal district court in Kansas for purposes of evaluating a rule 60(b) motion.
 

 We concur in the district court’s observation that “to grant the relief requested would mean that the Eckels would be excused from any accountability despite their ‘willful and malicious conversion’ of funds— the very act which under the law made the indebtedness nondischargeable.”
 

 IV.
 

 We have carefully considered the Eckels’ remaining allegations of error and hold they are individually and collectively without merit.
 

 AFFIRMED.