Sam J. WALTERS, D.C., Plaintiff/Counter–Defendant/Appellee/Cross–Appellant,

v.

MONARCH LIFE INSURANCE COMPANY, Defendant/Counter–Claimant/Appellant/Cross–Appellee.

Nos. 93–3232, 94–3130, 93–3249 and 94–3115.

United States Court of Appeals, Tenth Circuit.

June 6, 1995.

---

Lee M. Smithyman (David J. Roberts and Richard W. Hird, with him on the brief), Overland Park, KS, for defendant/counter-claimant/appellant/cross-appellee.

W. James Foland (Thomas A. Sheehan, with him on the brief), Kansas City, MO, for plaintiff/counter-defendant/appellee/cross-appellant.

Before EBEL, Circuit Judge, BRIGHT * and McWILLIAMS, Senior Circuit Judges.

BRIGHT, Senior Circuit Judge.

Sam J. Walters, a chiropractor and nutritionist, brought this breach of contract action against Monarch Life Insurance Company ("Monarch") after Monarch declined to continue to pay monthly benefits under two disability type policies. Monarch discontinued Walters' benefits on grounds that Walters had wrongfully claimed disability benefits and that as of the time of termination of benefits, September 4, 1991, Walters had not been disabled for a substantial period of time. Monarch denied liability under the policies and cross-claimed seeking return of prior benefits paid. A jury returned a verdict for Walters in the sum of $44,066.13 and denied Monarch's counterclaim.

The trial court entered judgment on that verdict and, pursuant to post-trial motions, denied Monarch a new trial. The trial court further denied Walters additional requested relief that would have increased his damages award to $176,265.73 and denied Walters' demand for reinstatement of the policy. The court also denied Walters' request for attorney's fees. Both parties have appealed. The case is in federal court based on diversity of citizenship and the requisite amount in controversy.

On review of the record and the many issues in controversy, we affirm the judgment and post-trial orders denying additional relief to either party.

## I.

### Background

Monarch in 1986 issued Samuel Walters a disability income policy providing for $9,500.00 in monthly benefits. In 1985 Monarch had issued a disability overhead expense policy to provide, on Walters' total disability, payments of $20,900.00 per month for fifteen months, with a maximum benefit of $313,500.00. These policies defined total disability as the inability to do the substantial and material duties of the insured's regular occupation, i.e., the insured's usual work when disability begins.

Walters sustained an alleged lower back injury in a parasailing incident at the Lake of the Ozarks in Missouri on June 8, 1988. He then made a claim for total disability as of October 5, 1988. Thereafter, Monarch commenced monthly payments on each policy and waived further policy premiums as provided by the policy's terms.

These benefits continued until September 1991 when Monarch terminated them on grounds that its investigation disclosed that Walters was not totally or residually disabled and had not been so disabled for a substantial period of time. By this time Monarch had paid out the full benefit of the overhead expense policy, $313,500.00 and disability income benefits of $336,834.00, totalling $650,334.00. On September 18, 1991, Monarch also notified Walters that they were removing the premium waiver from his disability income policy.

As a result, Walters brought this action in state court. Monarch removed the action to federal district court, and following extensive discovery, the parties tried the case over a three-week period on the issues of (1) whether Walters sustained any serious injuries in the parasailing accident, (2) whether he in fact became physically disabled, and (3) whether his regular work prior to that incident was that of a chiropractor or that of a health consultant in the areas of nutrition and marketing of nutritional products. Walters contended that his receipt of substantial income during the periods in question did not affect his total disability claim since that claim related to his physical inability to do most of the hard physical effort related to chiropractic manipulation, his alleged regular occupation.

The parties disputed crucial facts as well as inferences to be drawn from the evidence. The district judge submitted the matter to the jury on special interrogatories, with answers as follows:

* The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

## VERDICT

1. Do you find that plaintiff Sam Walters sustained an injury to his back on or about June 8, 1988?

Yes    X         No      

NOTE: If you answered "Yes" to Question 1, proceed to Question 2. If you answered "No," proceed to Question 5.

2. Do you find that as a result of that injury in 1988 plaintiff Sam Walters was disabled to the extent that he was unable to perform the substantial and material duties of his regular occupation?

Yes    X         No      

NOTE: If you answered "Yes" to Question 2, proceed to Question 3. If you answered "No," proceed to Question 5.

3. Do you find that plaintiff Sam Walters is now unable to perform the substantial and material duties of his regular occupation.

Yes    X         No      

NOTE: Proceed to Question 4.

4. What amount do you find plaintiff Sam Walters is entitled to recover as a result of defendant Monarch Life Insurance Company's breach of the disability insurance contract?

$   44,066.43

NOTE: If you answered this question, your deliberations are completed.

5. Do you find that plaintiff Sam Walters committed fraud upon defendant Monarch Life Insurance Company in submitting his insurance claims to Monarch Life Insurance Company?

Yes        No      

NOTE: If you answered "Yes" to Question 5, proceed to Question 6. If you answered "No," your deliberations are completed.

6. What amount do you find Monarch Life Insurance Company is entitled to recover as a result of plaintiff Sam Walters' fraudulent conduct?

$   .

---

Appellant's App. 895.

## II.

### Monarch's Appeal

We turn first to Monarch's appeal which asserts that the trial court (1) abused its discretion in denying Monarch leave to amend its complaint, pursuant to Fed. R.Civ.P. 15(a), to assert a claim of rescission; (2) abused its discretion in excluding six items of evidence; and (3) erred in refusing to instruct the jury on residual disability.

### A. Denying Leave to Amend

The record discloses that January 31, 1992 marked a deadline for filing motions to amend the pleadings; that August 21, 1992 marked the date of the final pretrial conference, which date became extended to October 2, 1992. Only by way of a revised pretrial order in October 1992 propounded by defendant, did Monarch assert a claim for rescission of the disability policy for false, fraudulent and intentional misrepresentations in the application for insurance.

The plaintiff opposed the amendment, the magistrate judge denied the amendment and the district court adopted that order. The order, among other things, stated:

> The key fact in the court's consideration is that defendant knowingly delayed raising this issue until the "eve of trial". This case has been set for trial on the court's November 1992 trial calendar since the Scheduling Order was entered on December 30, 1991. Notwithstanding defendant's knowledge of the approaching trial setting and the close of discovery, defendant intentionally withheld disclosure of the potential assertion of a rescission claim until approximately one month before trial. The court finds such conduct does not establish excusable neglect. The motion to amend is untimely and will be denied.

Appellant's App. at 435.

This order has support in the record and we will not second guess the trial court in this area. The standard of review is abuse of discretion. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *LeaseAmerica Corp. v. Eckel*, 710 F.2d 1470, 1473 (10th Cir.1983).

The rescission claim would have introduced an entirely new scenario for trial relating to allegedly false or fraudulent disclosures made in the application for the disability policies. At least some of the evidence supporting a claimed rescission was known to Monarch at an earlier time. Monarch also claims that Walters caused Monarch's delay in discovering the necessary evidence by resisting various discovery orders. The trial court considered these contentions as a matter of discretion.

No abuse of discretion is shown.

## B. Evidence

Most of the evidence rulings fall into the category of matters addressed to the discretionary call of the trial judge whether to grant or deny their admissibility. *See Acrey v. American Sheep Industry Ass'n*, 981 F.2d 1569, 1575 (10th Cir.1992) ("We review rulings as to the admissibility of evidence under an abuse of discretion standard."). These include:

1. A ruling prohibiting defendant's radiologist Dr. Jay Rozen from interpreting an April 24, 1991 MRI. The district court rejected the proffered evidence because opposing counsel had been assured that any additional testimony, not presented by prior deposition, would be disclosed to opposing counsel prior to trial.

On this record, we cannot tell whether that evidence should have been earlier disclosed. Further, it would not appear that this testimony would have made any difference in the trial.

The record does not clearly indicate that the trial court erred in rejecting the evidence on the basis of the proponent's earlier failure to disclose its expert's proposed opinion. The trial court might well have permitted this testimony to offset a contrary opinion of one of plaintiff's experts, but we will not reverse on this incidental evidentiary matter. In any event, in light of the extensive trial record, we do not believe the exclusion of this evidence prejudiced Monarch and thus did not constitute reversible error.

2. Monarch sought to introduce exhibits of a so-called *"Mass. Mutual* court file" as evidence of a prior similar insurance fraud. The court declined the offer. Under 404(b) of the Federal Rules of Evidence, a trial judge possesses wide discretion to exclude evidence of other crimes, wrongs or acts. No error is shown.

3. The trial court also excluded certain evidence of plaintiff's involvement in the Culture Farms business. The defendant apparently sought to prove that Culture Farms operated as a fraud, that the business venture began unravelling and that it thus served to provide a motive for Walters to defraud Monarch and obtain replacement income lost in Culture Farms. This scenario seems just too tangential to the issue of whether Walters was disabled. No prejudicial error is shown.

4. Monarch contends that the court "inconsistently" and "unfairly" permitted Walters to cross examine Monarch's witness Douglas Allen who had testified to Walters' strenuous activities inconsistent with disability. The court allowed Walters to elicit testi-

mony that Allen had made a monetary claim for more than $88,000 against Walters and that Allen had made complaints to Attorney Generals in Kansas and Missouri about Walters' business activities. Monarch contends that on direct examination it should have been allowed to question Allen about his failed business dealings with and complaints about Walters. Inconsistently, the court permitted Walters' counsel to bring out these matters in order to impeach Allen's credibility and expose his motivation for making some of the allegations against Dr. Walters.

Monarch's contention here, absent any specific objection relating to the rules of evidence, raises no cause for review. The charge of an "inconsistent" or "unfair" ruling represents argument but not a specific objection reversible on appeal. *See* Fed.R.Evid. 103.

Moreover, the record in any event establishes that Monarch failed to press any real objection in the trial court. The record discloses the following:

[Cross–Examination]

Q. In the fall of 1990 you made a complaint to the Attorney General of the State of Missouri about Dr. Walters?

A. [Allen] That is correct.

Q. And in the fall of 1990 you made a complaint to the Attorney General of the state of Kansas about Dr. Walters?

A. That's correct.

Q. That was in the fall of 1990 that you contacted Mr. Gallet?

A. Or the spring of—

THE COURT: Now I'm going to stop you here because I'm going to tell the jury that, just in fairness, I wouldn't let Mr. Smithyman inquire into this on direct examination, members of the jury, but I'm going to let Mr. Foland inquire about it on cross-examination for the purpose of inquiring into the motives of Mr. Allen and also his credibility.

But I want to tell you that on redirect I'll permit you to inquire in some detail about this if you wish to do so.

MR. SMITHYMAN [for Monarch]: That's fine. Your Honor.

Appellant's App. 1345.

5. Another evidentiary claim relates to the trial court's exclusion on relevancy grounds of the high loss claims ratio of Monarch's agent who sold the insurance disability policies to Walters. Monarch states in its brief, "Evidence of [agent] Mealman's excessive claims ratio was relevant to Monarch's theory that Mealman participated in the fraud with Walters" and should have been admitted pursuant to Rule 404(b).

That theory with that evidence proffered seems a bit much for any judge or jury to swallow. The proffered evidence seems to lack relevance and the trial court did not err in its ruling.

6. Finally, we reach the one evidentiary matter with arguable merit.

■ Walters' verified petition, filed September 27, 1991 (a copy unfortunately indexed but not included in Vol. I of a four volume appellant's appendix), stated (according to the brief) that Walters did not have substantial income other than income from the disability policy and that he would not be able to meet his financial obligations.

That was a palpably false assertion. Walters earned $9,375.00 at Yellow Freight in September 1991, $9,000.00 in October of 1991 and similar amounts in November and December. Walters verified the petition. The false statements in the petition should have been admitted as a statement of a party which affected Walters' credibility. The district court rejected the evidence as "unfairly prejudicial." *See* Fed.R.Evid. 403.

■ The court erred in its exclusion. *Cf. Frank v. Bloom,* 634 F.2d 1245, 1251 (10th Cir.1980) (determining that factual matter contained in the pleadings is admissible as an admission by a party). However, we do not consider that this evidentiary error in the three-week trial amounted to prejudicial error. First, the jury received an abundance of other evidence relating to Walters' lack of credibility during this lengthy trial. Second, if admitted, a jury could well have construed the petition language in question as lawyer's hyperbole, or Walters might have explained that his lawyers inadvertently misstated the facts and that Walters did not notice the error in signing the verification.

In sum, we find no prejudicial error in the trial judges' evidentiary rulings.

## C. Instruction on Residual Disability

█ The issue of residual disability did not surface until the first day of trial when Monarch requested instructions to support a contention that Walters did not sustain total *or* residual disability.

A review of the record indicates that both parties sought an all or nothing resolution of the controversy. Monarch denied any liability and sought recovery of its full amount previously paid. Walters sought all past due disability payments. Further, the fraud claim and that of residual disability were inconsistent.

The court in rejecting the instruction on residual disability stated the following in response to counsel's request:

THE COURT: That [request] is over-ruled for two reasons: the first reason is that there's no mention of a reduction in recovery by the plaintiff because of any residual disability provisions of the policy. In other words, it is not covered at all in the Pretrial Order. And for that substantial reason, the [request] is denied.

Appellant's App. 1441.

Although the jury, in questions sent to the court during deliberations, may have been considering some type of partial disability, counsel for defendant specifically contended that the 80% provision for residual disability had not been established. Thus, the court properly refused any instruction on residual disability as not an issue in the lawsuit. *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456 n. 6 (10th Cir.1982) (noting that it is within the trial court's discretion to give instructions on issues beyond the scope of the pretrial order). Monarch suggests that questions raised by the jury indicated its concern over residual disability. Monarch argues that the jury awarded residual disability without appropriate instruction from the court on how to properly calculate residual benefits and without the parties having argued this issue. As demonstrated in the rejection of Walters' cross appeal, we cannot and do not assume the adverse verdict to Monarch rested on any residual disability.

Accordingly, we reject Monarch's appeal.

## CROSS APPEAL

The Walters' appeal raises three issues:

1. Whether the district court erred in denying Walters' motion to amend the judgment to reflect that the disability insurance policy is fully reinstated by reason of the jury's award to plaintiff and its rejection of the insurer's counterclaim.

2. Whether the district court erred in rejecting Walters' motion for judgment as a matter of law for full recovery of disability benefits to the close of the trial on the basis that the jury found liability for benefits against Monarch on the policy. No dispute existed as to the amount of benefits to which Walters was entitled if the policy remained in force because of Walters' continuing total disability.

3. Whether the trial court erred in rejecting Walters' claim for attorney's fees.

We reject these contentions and affirm.

█ The first two issues intertwine calling upon the court to determine whether the jury's verdict can be justified under the instructions and the evidence. The jury returned an award of about 25% of the benefits due if Walters had established his total disability during some of the period in question. As we have noted, the jury did not have any option to bring in a verdict for residual liability as no instructions had been given to it.

However, the parties presented conflicting evidence. The parties disputed total disability and offered evidence indicating no disability or total disability at certain times.

The jury remained free to determine that Walters suffered total disability some of the time and no disability at other times. Thus, it could have determined under the evidence that Walters sustained total disability during 25% of the time period between September 4, 1991, when Monarch terminated benefits, to the date of the judgment on December 4, 1992.

Essentially, the district court came to the conclusion that the jury's award could be reconciled with the evidence. We agree.

Further, the district court denied plaintiff's motion to reinstate the disability policy as

inappropriate under Fed.R.Civ.P. 60(a). The court left open a possible equitable remedy.

Because of what has been said relating to disability benefits over only a part of the time period in question, a question exists whether Walters can establish continuing coverage under the disability policy in the absence of having paid premiums when not disabled. However, we do not decide that issue here. Such question may be presented to the district court under its prior ruling. We cannot say, however, that reinstatement of the policy must follow from the jury award. Accordingly, we reject this ground of Walters' appeal.

Finally, we AFFIRM the denial of attorney's fees to Walters on the basis of the district court's thorough and thoughtful opinion.[1]

We AFFIRM the judgment of the district court and its denial and rejections of post trial motions of each party.

---

1. Walters sought attorney's fees under Kansas law (Kan.Stat.Ann. § 40–256 (1994)) for failure to pay the full amount of the loss without "just cause or excuse." The trial court found that denial of fees "was prompted by a bona fide controversy of plaintiff's physical status." That finding has ample support in the record and justifies denial of attorney's fees.